## STATE OF CONNECTICUT *v.* NAPIER TALTON
### (11473)

PETERS, C. J., HEALEY, SHEA, DANNEHY, and SANTANIELLO, Js.

Argued June 4—decision released August 27, 1985

*John R. Williams,* with whom, on the brief, were *Sue L. Wise* and *Beth Merkin,* legal intern, for the appellant (defendant).

*Christopher Malany,* special assistant state's attorney, with whom were *Julia D. Dewey,* assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, for the appellee (state).

DANNEHY, J. The defendant was charged in the first part of an indictment with the crime of sexual assault in the first degree in violation of § 53a-70 of the General Statutes.[1] He was tried by a jury and found guilty. The defendant was also charged in the second part of the indictment with being a persistent dangerous felony offender under § 53a-40 of the General Statutes.[2] The subsequent court trial on that charge also resulted in a conviction. No claims of error are directed against this conviction under the second part of the indictment apart from those relating to the predicate offense in the first part of the indictment. After his post-trial motions were denied, the defendant was sentenced to the custody of the commissioner of correction for a term of not less than twenty-five years nor more than life.

The defendant did not testify at the trial. The complainant testified that at approximately 6 p.m. on February 13, 1981, she and a neighbor were together

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person. . . ."

[2] "[General Statutes] Sec. 53a-40. PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the . . . crimes enumerated in subdivision (1). . . . "

at her apartment in New Haven. They heard a knock on the door. The neighbor opened the door and a man whom the complainant identified as the defendant entered the room. After the neighbor left, the defendant made sexual advances toward the complainant. She demanded that he leave. At this point she was grabbed by the defendant, thrown onto a bed and forced to engage in sexual intercourse. When the defendant released her, she ran to her neighbor for refuge. The neighbor saw the defendant leave the complainant's apartment. Police officers took the complainant to a hospital where a vaginal smear was taken. The laboratory tests indicated the presence of sperm. The defendant denied having intercourse with the complainant on that occasion, although he sharply questioned her on the issue of forcible compulsion, so that the case was in large part one of credibility.

It is unnecessary to elaborate the facts further. Indeed, the evidence unquestionably was sufficient to sustain the charge made in the first part of the indictment. This appeal is based upon a series of questions that raise four main issues: (1) whether the trial court's exclusion of any evidence regarding the determination of paternity of the child allegedly conceived during the rape of which the defendant was accused violated his state and federal constitutional rights to cross-examine witnesses and to establish a defense; (2) whether the trial court erred by permitting the state to show in its case in chief that the defendant had lied when he stated, during police interrogation that followed *Miranda* warnings, that he had never before been arrested; (3) whether the trial court denied the defendant assistance of counsel and due process of law in violation of the fifth and fourteenth amendments by permitting the state to present evidence that the defendant had refused to answer a question during police interrogation; and (4) whether the trial court erred and denied

the defendant effective assistance of counsel, the right to present his defense, and the right to compulsory process in violation of the sixth and fourteenth amendments and article first, § 8, of the Connecticut constitution by refusing to call to the stand an available witness who assertedly would have presented evidence material and favorable to the defense. Additional facts will be discussed as may be necessary to place these issues in appropriate context.

I

The defendant first contends that the trial court's exclusion of any evidence regarding the paternity of a child allegedly conceived during the sexual assault violated his state and federal constitutional rights to cross-examine witnesses and to establish a defense. We disagree.

Prior to trial, the defendant requested that the trial court order the complainant and her child to submit to a blood test "for the purposes of determining paternity." The defendant's request was based on the complainant's grand jury testimony that she believed, from what she had been told in the hospital, that whoever assaulted her on the night in question was the father of her child. The defendant claimed that medical evidence establishing that he was not the father of the child "would be strong exculpatory evidence . . . that he was not the individual who committed the offense." The trial court, correctly noting that it could not make substantive use of the complainant's grand jury testimony; see General Statutes § 54-45a (b); denied the motion on the ground of relevance but indicated that it would reconsider the request at a later stage in the trial, if a proper factual foundation could be established.

At the conclusion of the complainant's direct testimony, the defendant renewed his request for blood testing and moved that he be allowed to cross-examine the

complainant concerning the paternity issue. The trial court expressed strong concern that, on the state of the record as developed to that point, the issue of paternity appeared to be irrelevant. The defendant was allowed, however, in the absence of the jury, to question the complainant extensively in order to explore this issue. The defendant apparently advanced various theories as to the relevance of the paternity issue but he was unable to establish any causal connection between the sexual assault and the child's paternity. Eventually, defense counsel himself conceded that "the issue as far as the law is concerned, is, of course, not relevant. . . ." The trial court then remarked that it would not "allow this case to be turned into some type of paternity proceeding" and ultimately ruled that "the inquiries with respect to the paternity or lack of paternity of a child born some nine and a half months later on the state of this record, are irrelevant." The defendant objected and properly excepted.

"The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). The cross-examination of a witness in an effort to show his or her motive, interest, bias, or prejudice against a party is a matter of right, although the extent of such cross-examination is within the judicial discretion of the court. *State* v. *Tropiano,* 158 Conn. 412, 426, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970); *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505 (1959). "It is a reasonable exercise of judicial discretion to exclude questions which would introduce issues foreign to the case; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490 [1952]; or evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated

on vital issues of the case. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473 [1964]." *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 (1969). We have reiterated that evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978).

On appeal, the defendant's claim of relevance appears to be limited to only one of the theories advanced at trial; that is, if it were shown that the defendant did not father the child, then the credibility of the complainant's entire testimony could have been destroyed. This argument hinges on our holding in *State* v. *Mastropetre,* supra, which was controlling at the time of trial.[3] There, we noted that, as a general rule, "evidence of prior sexual relations cannot be introduced to impeach a complaining witness' credibility." Id., 518. The defendant argues that, under the exception to the general rule enunciated in *State* v. *Rivers,* 82 Conn. 454, 458, 74 A. 757 (1909), and distinguished in *Mastropetre,* he should have been allowed to explore the issue of paternity by questioning the complainant about her prior sexual conduct. The defendant, however, misconstrues the rule in *State* v. *Rivers,* supra, wherein we held that "courts may properly . . . permit the accused to inquire on cross-examination as to particular acts of immorality and unchastity of the complainant either before or after the date of the alleged assault" when the complainant has made a claim of chastity on direct examination. Id. In this case, the complainant testified on direct examination that she had not had sexual relations with any other person for "three or four days or a week" prior to

---

[3] At the time of the defendant's trial, General Statutes § 54-86f, Connecticut's rape shield law, was not in effect.

February 13, 1981, or during the twenty-one day period after February 25, 1981, and that she had not seen the defendant at any time subsequent to the alleged sexual assault except in the courthouse. She never made any claims of chastity nor did she make any claim at trial that the defendant was the father of her child. In light of this testimony the trial court was understandably skeptical about the defendant's ability to demonstrate the relevance of his claim. The trial court did provide the defendant with ample opportunity to establish a link between the paternity issue and the sexual assault. The defendant's offer of proof demonstrated the link was missing.

The issue in this case was whether this defendant sexually assaulted the complainant. The complainant's subsequent pregnancy was irrelevant as to whether a sexual assault had occurred. The areas that the defendant sought to explore were plainly collateral in nature. Under the facts of this case, the pregnancy of the complainant had no bearing whatever upon the identity of the person who sexually assaulted her. The fact of the complainant's pregnancy did not tend to prove or to disprove that the defendant committed the crime. This case is clearly distinguishable from those cases, relied upon by the defendant, such as *State* v. *Rivers,* supra, where the complainant testified that the sexual assault was the only act of intercourse in which she had engaged. See also *People* v. *Bynon,* 146 Cal. App. 2d 7, 303 P.2d 75 (1956); *People* v. *Washburn,* 75 Misc. 2d 1088, 349 N.Y.S.2d 978 (1973); *State* v. *Lawson,* 267 S.E.2d 438 (W. Va. 1980).

Evidence of acts of sexual conduct which tend to show that the defendant did not commit the sexual assault may be admissible. *State* v. *Mastropetre,* supra, 519–21; cf. General Statutes § 54-86f. Admitting such evidence for the limited purpose of denying the act charged when its probative value outweighs any preju-

dicial effect on the victim is consistent with both our policy of encouraging sexual assault victims to come forward and an accused's fundamental right to present a defense under both the sixth amendment to the federal constitution and article first, § 8, of the Connecticut constitution. The defendant was given wide latitude by the trial court to attempt to demonstrate the relevance of the paternity evidence. He was unable to show any relevancy. In the absence of any connection between the issue of paternity and the sexual assault, the defendant's state and federal constitutional rights to cross-examine were not infringed upon by the trial court's rulings excluding the evidence of paternity.[4]

## II

The defendant next claims that the trial court erred in permitting the state to show in its case in chief that the defendant had lied when he stated, during custodial interrogation, that he had never before been arrested. We agree.

During its case in chief, the state introduced the testimony of the two police officers who conducted the sexual assault investigation and who eventually arrested the defendant. In the absence of the jury, each officer testified that the defendant, after being advised of his *Miranda* rights, was asked whether he had been arrested before. He replied that he had not. The defendant, in fact, had been incarcerated on a prior manslaughter conviction. The defendant objected to the admission of this testimony. The state claimed that the evidence was admissible to indicate consciousness of

---

[4] We note that the defendant was not precluded from cross-examining the witness with respect to any areas other than the paternity issue. Although the defendant chose not to pursue these areas, "[t]he test is whether the *opportunity* to cross-examine existed, not whether full use of such opportunity was made." (Emphasis in original.) *State* v. *Mastropetre,* 175 Conn. 512, 522, 400 A.2d 276 (1978).

guilt and the trial court initially agreed that the evidence was admissible on that ground. Reserving all of his appellate rights as to the admissibility of the arrest evidence, the defendant agreed to a procedure whereby the trial court, at the appropriate point in the police officers' testimony, would advise the jury that the defendant had stipulated that he had not answered truthfully when he told the police that he did not have a prior arrest record.

Both officers were then permitted to testify in the presence of the jury. The trial court did not instruct the jury on the doctrine of consciousness of guilt. Instead, immediately following each officer's statement with regard to the defendant's denial of an arrest record, the trial court gave the following limiting instruction: "Now, I wish to caution you merely because the defendant had been previously arrested, that fact does not mean that he is guilty of this charge. The only reason that is admitted is to demonstrate the fact that when he was questioned by the police at the time the officer is talking about, he did not respond truthfully to the officer's questions, and I will explain when I give you the instructions what the probative meaning is with respect to that, but that is the purpose for which this has been admitted. It is not admitted to show that he had been previously arrested and, therefore, since he had been previously arrested, he must be guilty of this charge. That is not the purpose for which it was admitted."

At the close of all of the evidence, the trial court again refused to charge the jury, as the state requested, on the theory that the defendant's false denial of an arrest record was probative of consciousness of guilt. The trial court reasoned that there was no basis upon which to conclude that this particular falsehood was made as a result of, and in an attempt to, avoid detection for the alleged criminal act. See *State* v. *Banks,* 194 Conn. 617,

621–22, 484 A.2d 444 (1984). Instead, in its charge, the trial court instructed the jury, over the defendant's objection and exception, that it might consider the evidence only "as bearing on credibility of the defendant insofar as the other statements made to the police by the defendant which included among various other statements, a claim that he and the victim had not had any sexual relations that night."

The general rule is that evidence of the commission of other crimes or specific acts of misconduct is inadmissible to prove that a defendant is guilty of the crime charged against him. See *State* v. *Periere*, 186 Conn. 599, 610, 442 A.2d 1345 (1982), and cases cited therein. One recognized exception is that such evidence may be used, under certain circumstances, to impeach the credibility of an accused who takes the stand in his own defense. See *State* v. *Marquez*, 160 Conn. 47, 52–53, 273 A.2d 689 (1970). In this case, however, since the defendant did not testify at trial, the issue of his credibility was not properly before the jury. This being so, we hold that it was error for the trial court to admit the evidence of the defendant's false statement with respect to his prior arrest record.

Our inquiry does not end with the conclusion that the admission of this testimony was erroneous. We now consider whether the admission of the testimony was so prejudicial to the rights of the defendant as to deprive him of a fair trial. *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980). Stated another way, the question is "whether the claimed erroneous action of the court would have been likely to affect the result." *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976).

Generally, "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitu-

tional right, no constitutional issue is involved." *State v. Periere,* supra, 611, quoting *United States ex rel. Bibbs v. Twomey,* 506 F.2d 1220, 1222 (7th Cir. 1974). Although the defendant's claim is based on an evidentiary ruling, making it incumbent upon him to demonstrate the harmfulness of the error; see *State v. Januszewski,* 182 Conn. 142, 174, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); he argues that the prejudicial impact of the trial court's ruling deprived him of a fair trial.

In support of his position, the defendant relies on *State v. Ferrone,* 97 Conn. 258, 116 A. 336 (1922), wherein this court held that the defendant was denied a fair trial when a police officer testified that the defendant, during a custodial interrogation, said that he had never been arrested when in fact he had just spent "seven years in Sing Sing." The court reasoned that this evidence "was obviously intended for the purpose of picturing the accused as a notorious criminal"; id., 267; thereby prejudicing the jury against him.

This case is clearly distinguishable from *Ferrone.* As evidenced by the procedure stipulated to by the parties, the trial court used extreme caution in shielding the defendant from any undue prejudice by avoiding the mention of any details of the defendant's prior conviction. The jury was informed only that when "the defendant told Detective Cartoceti on February 13, 1981, that he had not been previously arrested, that that was, in fact, not true," and, "that at that point in time, he had been previously arrested and he knew he had been previously arrested." Thus, the jury was exposed to a mere reference to a prior arrest without any indication of a conviction, much less a long term of imprisonment. Further, neither the specific nature of the charge nor the underlying facts were put before the jury. We cannot say that the evidence of the defendant's denial of a prior arrest record, without more,

tended "to prove that [the defendant] was a notorious criminal" and, thus, so prejudiced the jury as to deny him a fair trial. *State* v. *Ferrone*, supra, 268.

Our conclusion that it is not likely that the error involved here deprived the defendant of a fair trial rests upon several additional factors. The principal factor is the overwhelming nature of the evidence which corroborated the complainant's testimony. The complainant's neighbor testified that she was visiting the complainant on the evening in question. The witness stated that a man, whom she subsequently identified as the defendant, came to the front door. She sat with the defendant for a few minutes and then returned to her apartment. Some twenty minutes later, the complainant ran to her neighbor's apartment. As the neighbor opened the door in response to loud, repeated knocking, the complainant screamed she had just been raped by the man the neighbor had earlier met in the complainant's apartment. She was described by the neighbor as upset, crying, with her clothing disarrayed. The neighbor saw the defendant step out of the complainant's apartment and walk away "in a hurry." The neighbor then proceeded to call the police and, upon their arrival, the complainant gave her statement.

At the trial, the two police officers who investigated the incident related in detail the description of the assault which the complainant had given to them. This description was virtually identical to the complainant's testimony at trial.

Additional corroboration was adduced by the testimony of four medical and forensic expert witnesses. After the assault, the complainant was taken to Yale-New Haven Hospital where she told the counselor of the rape crisis team that she had been sexually assaulted. She was examined by a gynecologist whose findings were consistent with recent and forcible vagi-

nal intercourse. Extensive physical evidence corroborating the fact of a forcible sexual assault was admitted into evidence.

One of the defendant's own witnesses testified that the complainant had come to her with the police shortly after the assault and had told her that she had been raped by the defendant. The complainant had asked this witness where the defendant lived. The defendant admitted that he had been in the complainant's apartment on the evening of February 21, 1981, but he denied having sexually assaulted her.

We also base our conclusion on the following additional factors. The reference to the defendant's false denial of an arrest record constituted only an isolated incident in a long trial. Moreover, as previously discussed, the reference was made to the mere fact of a prior arrest; no mention was made of a conviction. Finally, the jury was cautioned that the fact of a prior arrest was not to be considered as proof of present guilt.

All of these factors lead us to the conclusion that the trial court's error was not likely to have affected the result and did not, therefore, deprive the defendant of a fair trial. Each witness was able to corroborate completely the complainant's testimony. On the basis of our review of the record, we find that the erroneously admitted evidence, and any possible prejudice resulting therefrom, did not affect the verdict.

### III

The defendant next claims that the trial court erred in permitting the state to present evidence that the defendant refused to answer a question during police interrogation. Detective Mel Cartoceti, one of the officers who arrested the defendant, testified that the

defendant, after having received *Miranda* warnings,[5] related the following information to him: On the evening in question, the defendant had been at the complainant's apartment. He had engaged in sexual relations with her in the past but not on that particular evening. In fact, on that evening, he had had sexual relations with a female friend.

Cartoceti testified that he tried to verify this story by asking the woman's name. As Cartoceti began to explain that the defendant had declined to answer this question, the defendant objected and the jury was excused.

On interlocutory examination, Cartoceti testified that the defendant's precise response was "I'd rather not tell you. I don't want to tell you." The defendant had then proceeded to answer other questions. Cartoceti stated that the defendant did not ask that police questioning cease.

The defendant contended that his refusal to answer a specific question constituted an invocation of his right to silence. The state argued that if the witness was not allowed to answer, the jury might be misled into thinking that "the police never bothered to inquire who [the woman] was or to investigate that." The trial court explicitly found that the defendant had not invoked his right to silence; "[h]e just chose not to give that information."

The defendant then requested a cautionary instruction to the effect that the jury was not to draw any unfavorable inference from the defendant's failure to

[5] The trial court conducted a suppression hearing with respect to the voluntariness of the admissions made by the defendant while in custody. The trial court found that the defendant had been advised of and properly understood his *Miranda* rights and that he had waived them when he responded to police questioning. The defendant has not, on appeal, challenged this finding.

answer any police questions. The trial court reluctantly agreed to "act in extreme caution," and the jury was properly instructed on the limited use to be made of this evidence. If the defendant wished for more specific instructions on this point, he should have asked for them. It clearly appears from the record that no further instructions were requested.

When direct examination resumed, Cartoceti testified that the defendant declined to give the female friend's name. The additional information elicited from Cartoceti was that the defendant claimed to have had sexual relations with the complainant at an apartment off Chapel Street on a prior occasion. The police had investigated, but were unable to locate the apartment. Neither in closing argument nor in the charge to the jury was any further reference made to the defendant's failure to answer a question while in custody.

It is well established that it is constitutionally impermissible for the "court or prosecutor to comment on the defendant's silence in the face of in-custody accusations or interrogation. *State* v. *Bates,* 140 Conn. 326, 99 A.2d 133 [1953]; *State* v. *Ferrone,* 97 Conn. 258, 116 A. 336 [1922]; see *Miranda* v. *Arizona,* [384 U.S. 436, 468 n.37, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]." *State* v. *Ralls,* 167 Conn. 408, 430, 356 A.2d 147 (1974). In *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the United States Supreme Court explained: "The warnings mandated by [*Miranda*], as a prophylactic means of safeguarding Fifth Amendment rights . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights." Id., 617. The court reasoned that *Miranda*

warnings contain an implied assurance that a defendant's silence "will carry no penalty." Id., 618. As such, silence following *Miranda* warnings is "insolubly ambiguous" because it may constitute a reliance upon those rights rather than a tacit admission that the accused has an insufficient defense or explanation for his conduct. Id., 617.

The *Doyle* decision, however, is not applicable to the facts of this case. The crucial distinction is that, here, the defendant did not remain silent after he was arrested and advised of his rights. After being given *Miranda* warnings, the defendant clearly chose to forego his right to remain silent. Once an arrestee has waived his right to remain silent, the *Doyle* rationale is not operative because the arrestee has not remained silent and an explanatory statement assuredly is no longer "insolubly ambiguous." By speaking, the defendant has chosen unambiguously not to assert his right to remain silent. He knows that anything he says can and will be used against him and it is manifestly illogical to theorize that he might be choosing not to assert the right to remain silent as to part of his exculpatory story, while invoking that right as to other parts of his story. While a defendant may invoke his right to remain silent at any time, even after he has initially waived his right to remain silent, it does not necessarily follow that he may remain "selectively" silent.

We need not, however, in this case, decide the boundaries of intermittent assertion of the right to remain silent because, as the trial court found, the defendant's expression of a disinclination to answer one question was not tantamount to any assertion of his fifth amendment right. The defendant talked freely with the two officers who arrested him. In response to their questions, he voluntarily discussed with them his version of the events of the evening in question. In refusing to divulge the name of his alleged companion, he merely

said "I'd rather not tell you. I don't want to tell you." He did not ask that the interrogation be ended or indicate reluctance to answer other inquiries. Under these circumstances, because the defendant failed to invoke his fifth amendment right to remain silent, the evidence was neither impermissibly elicited nor improperly admitted.

## IV

Finally, the defendant claims that he was denied effective assistance of counsel when the trial court refused to call to the stand, at the defendant's request but contrary to defense counsel's judgment, a witness who assertedly would present testimony favorable to the defendant. The defendant claims also that he was thereby denied his right to present a defense and his right to compulsory process in violation of the sixth and fourteenth amendments to the federal constitution and article first, § 8, of the Connecticut constitution.

Throughout the trial, the defendant and his counsel were constantly at odds over trial tactics. The trial court thoroughly considered the numerous requests of the defendant either to dismiss defense counsel or to allow the defendant to be made "cocounsel," all of which were eventually denied after the trial court made an explicit finding that the defendant did not wish to proceed pro se.

During the trial, the defendant and his counsel disagreed over whether or not to call, as a defense witness, the brother of the complainant. The defendant claimed that this witness would provide favorable and material evidence in support of his claim of innocence. Defense counsel claimed that he had interviewed the witness and the witness was not willing to testify.

On the day after the close of the evidence and the summations of the parties, the defendant represented

to the trial court that he had spoken to the witness in question and that that witness would testify "in complete contradiction of everything his sister already stated to the Court." Defense counsel argued that it would be tactically unwise to call this witness as any such testimony would be inconsistent with the witness' prior statements to defense counsel and, as such, "would be very damaging to the defendant." The trial court denied the defendant's request to open the evidence and the defendant himself took an exception to the ruling. At no time during this discussion did the defendant either request to represent himself or renew his motion to be made cocounsel.

"The test that measures ineffective assistance of counsel requires a defendant to make two showings, that trial counsel's performance was not reasonably competent or within the range of ordinary training and skill in the criminal law, and that trial counsel's lack of competence contributed to the defendant's conviction. *State* v. *Tirado,* 194 Conn. 89, 91–92, 478 A.2d 606 (1984); *State* v. *Gregory,* [191 Conn. 142, 143, 463 A.2d 609 (1983)]; *State* v. *Chairamonte,* 189 Conn. 61, 63, 454 A.2d 272 (1983); see *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *State* v. *Rivera,* 196 Conn. 567, 570, 494 A.2d 570 (1985).

The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must

be evaluated not through hindsight but from the perspective of the attorney when he was conducting it.

On this record, we can only speculate why defense counsel chose to conduct the defendant's defense as he did. *State* v. *Rivera,* supra, 575. We need only reiterate that the appropriate vehicle for review of a claim such as this is a request for postconviction relief. *State* v. *Tirado,* supra, 93. An evidentiary hearing will provide the trial court with the necessary evidence to evaluate the competency of the defense and the harmfulness of any incompetency. Id.

We turn now to the defendant's remaining claim that, as a result of the trial court's denial of his request to open the evidence, he was denied his constitutional rights to present a defense and to compulsory process. This claim of trial court error is inextricably intertwined with the defendant's ineffectiveness claim. To analyze one claim is to analyze the other. We believe that a ruling regarding the defendant's claim of trial court error would unduly prejudice a later presentation of the ineffectiveness claim. We therefore decline to reach the merits of this remaining claim.

There is no error.

In this opinion the other judges concurred.