EDGAR TATUM *v.* COMMISSIONER OF CORRECTION
(AC 20432)

Lavery, C. J., and Schaller and Spear, Js.

Argued June 13—officially released October 2, 2001

*Felix Esposito*, for the appellant (petitioner).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John J. Davenport*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SPEAR, J. Pursuant to this court's granting of certification, the petitioner appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. He claims that, contrary to the court's decision, his trial counsel was ineffective because, at the petitioner's criminal trial, counsel failed (1) to call three witnesses whose testimony would have been helpful to the defense, and (2) to investigate and present an alibi defense. We affirm the judgment of the habeas court.

In *State* v. *Tatum*, 219 Conn. 721, 595 A.2d 322 (1991), our Supreme Court on direct appeal affirmed the petitioner's underlying murder conviction and recited the following facts that the jury reasonably could have found in the criminal trial. The defendant in February, 1988, shot and killed Larry Parrett in Parrett's home in Waterbury and wounded Anthony Lombardo, who had approached the defendant while he was knocking on Parrett's door. When Parrett's girlfriend, Tracy LeVas-

seur, opened the door, the defendant forced himself and Lombardo into the living room where Parrett and LeVasseur were smoking cocaine. LeVasseur and Lombardo left the room when the defendant and Parrett began to argue. A few moments later, Lombardo returned to find the defendant pointing a gun at Parrett. Lombardo stepped between the two men, but the defendant nevertheless fired four shots, which wounded Lombardo in the shoulder and killed Parrett.

That night, Lombardo picked out of a photographic array a photograph of a black man named Jay Frazer as the man who had shot him and Parrett. That same night, LeVasseur also selected Frazer's photograph from an array that the police showed to her. The defendant's photograph was not in either array. Approximately one week later, LeVasseur went to the Waterbury police and advised them that she had identified the wrong man. After a lineup in which Frazer participated, LeVasseur told the police that he definitely was not the assailant. Thereafter, LeVasseur chose the defendant's photograph from a photographic array as the person who had shot Parrett and Lombardo. Lombardo made no photographic identification, explaining that he preferred to see the parties in person. Lombardo and LeVasseur identified the defendant at the probable cause hearing and at trial as the man who had shot Lombardo and Parrett.

The habeas court found the following additional facts. The petitioner's trial counsel, Thomas K. McDonough, was appointed as a special public defender to represent the petitioner. At the time of his appointment, McDonough had been a member of the Connecticut bar for approximately ten years and had handled a number of court trials as well as a number of civil appeals. Prior to representing the petitioner, McDonough's criminal trial experience was limited to two jury trials in felony cases. McDonough's recollection was understandably

less than complete at the habeas hearing, as more than ten years had elapsed by that time.

McDonough had met with the petitioner on "numerous occasions." McDonough also hired an investigator, and both of them met with the petitioner on at least one occasion prior to trial. Although the principal identification witnesses, LeVasseur and Lombardo, both knew the petitioner and Frazer, the petitioner initially was reluctant to discuss with McDonough his involvement with the witnesses or the victims. The petitioner became more forthcoming as time passed. Some of the information provided by the petitioner was inaccurate, and some could not be verified. That particularly was so with regard to the various alibi defenses that the petitioner discussed with McDonough. Further facts will be set forth as necessary.

We first note our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 59 Conn. App. 302, 303, 755 A.2d 380, cert. denied, 254 Conn. 943, 761 A.2d 760 (2000).

For the petitioner to prevail, he must prove both that trial counsel's representation fell below an objective standard of reasonableness, making the performance deficient; *Aillon* v. *Meachum*, 211 Conn. 352, 357, 559 A.2d 206 (1989); and that the deficient performance actually prejudiced the petitioner. *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The performance yardstick is whether counsel's performance was "reasonably competent or within the range of competence displayed by lawyers

with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction,* 36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).

In *Strickland,* the United States Supreme Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted; internal quotation marks omitted.) *Strickland* v. *Washington,* supra, 466 U.S. 689.

As to the prejudice component of the *Strickland* test, a successful petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Copas* v. *Commissioner of Correction,* 234 Conn. 139, 147, 662 A.2d 718 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington,* supra, 466 U.S. 694. With that standard of review in mind, we now turn to the specific claims of the petitioner.

## I

## THE FAILURE TO CALL CERTAIN WITNESSES

The petitioner claims that his trial counsel was ineffective in not calling three witnesses to testify at the criminal trial. "The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it." *State* v. *Talton,* 197 Conn. 280, 297–98, 497 A.2d 35 (1985). We now turn to the petitioner's claims with regard to each witness separately.

## A

The petitioner first claims that his trial counsel was ineffective in not calling Ronald Gotay to testify at the criminal trial. In addition, the petitioner claims that counsel was remiss in failing even to investigate Gotay. As those claims are intertwined, we will discuss them together.

Gotay gave four statements to the police regarding the shooting incident, three of which he signed. Gotay was seventeen years old at the time of the statements and had been arrested on unrelated charges of possession of narcotics. The first statement is contained in the notes of a police detective dated March 24, 1988. The notes indicate that Gotay, upon his arrest, had stated that he was on the second floor of 24 Cossett Street, where Parrett lived on the first floor, when Par-

rett was killed and Lombardo was shot. He stated that he saw "Frezie" walk away from the house, but he did not want to get involved because he did not want "Frezie" to shoot him.

Gotay gave a signed and sworn statement on March 31, 1988. In that statement, Gotay stated that he heard three gunshots coming from the first floor at 24 Cossett Street while he was on the second floor at the same address. He saw a black male, whom he knew as Frazer, walking away from 24 Cossett Street. Frazer walked toward Orange Street and made a left turn on Orange Street before Gotay lost sight of him. Gotay's statement also recited that Parrett had told Gotay that Frazer thought that Parrett had "ratted Frazer out on a recent drug bust."

On April 7, 1988, Gotay gave a second sworn statement in which he stated that he was at 24 Cossett Street on the second floor with Manuel Vargas and a person whom he knew only as Eli. They all heard gunshots coming from the first floor. On April 27, 1988, Gotay gave a third sworn statement in which he stated that the statements he previously had given were based solely on what other people had told him and not on his knowledge. He fabricated the statements because the police told him that if he helped them with the murder, they would help him with his narcotics case. Gotay admitted that he was not at Parrett's house at 24 Cossett Street on the night of the incident. He also stated that he never saw Frazer on that evening.

The petitioner claims that trial counsel should have investigated Gotay and called him to testify despite his recantation because the statements could only have helped the petitioner's defense.

The court found that the petitioner failed to carry his burden of proof under *Strickland* as to his allegation that trial counsel had failed to properly investigate

Gotay because the investigator had been told by trial counsel to take a statement from Gotay and there was no evidence submitted about the results of that investigation. Neither the investigator nor Gotay were called to testify in the petitioner's habeas case. The court noted in its memorandum of decision that trial counsel's strategy was "to demonstrate that the police were correct when they arrested Frazer for the crime." Trial counsel adequately explained that he had made a decision that Gotay's statements about police inducement would call into question the investigative techniques of the police and run counter to counsel's theory of defense. The court also found that the decision not to call Gotay was "not below the standard of a reasonably competent criminal defense attorney." The court concluded that the value of Gotay's testimony was outweighed by his contradictory statements and the number of other persons who would have been available to impeach the substance of his statements implicating Frazer.

Furthermore, the court found that the persons whom Gotay indicated that he was with at the time he was on the second floor at 24 Cossett Street never gave any statements or indication of having been with or having even seen Gotay on the night of the shooting. Gotay testified that he was with "Eli," "Robbin" and Vargas. The court noted that Eli did not testify at the trial, but that Vargas and Robert Saunders did testify. The court stated that "[t]hey were both questioned as to who was present that night, and their answers were consistent with one another. Neither testified to the presence of Gotay."

We conclude that the court's fact-finding was not clearly erroneous with respect to trial counsel's decision not to call Gotay to testify at the criminal trial. In considering all of the circumstances, that was a strate-

gic decision that was properly made by trial counsel at the time.

Moreover, the court found that the petitioner had failed to demonstrate that he was prejudiced by the failure to call Gotay. The court did not give any reasons for that conclusion; the petitioner, however, did not file a motion for articulation. The petitioner argues in his principal brief that it is "clear that prejudice resulted from this failure to investigate." The court found that the petitioner failed to carry his burden of showing inadequate investigation because "no evidence was offered at the habeas hearing indicating that the request to investigate was not accomplished or that it was only partially completed, nor was [the investigator] called as a witness at the habeas hearing."

We conclude that the petitioner's claims with respect to the failure to investigate and to call Gotay to testify are without merit.

## B

The petitioner next claims that trial counsel was ineffective in failing to call Miguel Vargas to testify at the criminal trial. The court stated that Vargas had claimed "in a statement given to the police that he heard three or four gunshots on February 25, 1988, at about 11:15 p.m. He further stated that he witnessed an individual described as a black male, five feet, eight inches tall, running from a house approximately three houses away from 30 Cossett Street, where Miguel Vargas was standing at the time." That description did not match that of the petitioner, whom the court found was at least six feet, one inch tall. The court also found that it did not match Frazer's description because Frazer was considerably smaller than five feet, eight inches tall. The court found that trial counsel directed the investigator to obtain a statement from Vargas. Neither the investigator nor Vargas was called to testify at the habeas

hearing, and the court concluded that it could only speculate as to what Vargas' testimony would have been.

Although the petitioner's claim presents a close question, we conclude that the habeas court's fact-finding was not clearly erroneous in leading to that court's conclusion that the petitioner failed to carry his burden of proof with respect to the failure to call Vargas to testify. Trial counsel testified that he considered that the statement of Vargas described neither the petitioner nor Frazer. Trial counsel wanted a consistent theory of defense, namely that Frazer was the killer. Trial counsel adequately explained that he did not want to present an inconsistent theory that some other person other than Frazer was the actual shooter. That was a strategic decision that trial counsel was entitled to make.

## C

The petitioner also claims that trial counsel should have called John Hilton to testify. Trial counsel interviewed Hilton at the prison where he was incarcerated and was told by Hilton that when he and Frazer were incarcerated at the same facility, he had heard Frazer state that he had "set up" the defendant. After interviewing Hilton, trial counsel concluded that his statements were not reliable because he later changed the statement to indicate that he may have heard the "set up" claim from an unidentified third person rather than directly from Frazer.

Although the petitioner claims that the court's conclusions were clearly erroneous with respect to Hilton changing his statement, we disagree. Trial counsel testified that Hilton's "story changed a little bit . . . [in] that maybe he didn't hear it, but maybe somebody else had heard these things, but he wasn't sure who this other person might have been . . . ." The petitioner claims that further testimony from McDonough indi-

cated "[i]t did not change to the extent that I indicated that there might have been someone else other than Mr. Hilton [who] heard this, but I—there were some gaps in the story that came out while I was questioning Mr. Hilton that caused me to have some question about the veracity of his story, let me put it that way."

The court is the sole judge of credibility, and it is the trier's function to resolve conflicting evidence. The petitioner failed to call Hilton to testify, and we cannot conclude that it was clearly erroneous for the court to have concluded that McDonough had good cause to find Hilton unreliable.

## II

## THE ALIBI DEFENSE

The petitioner's last claim is that trial counsel was ineffective in not investigating and presenting a potential alibi defense. That claim also is without merit.

The court found that the petitioner's testimony with respect to potential alibi defenses lacked credibility. The court found that petitioner had "told counsel that at the time of the shooting that he was in California. . . . The petitioner also claimed that he told counsel he was in Connecticut with his son's mother. Alternative alibi defenses do not add to the petitioner's credibility. It does, however, support McDonough's testimony that the petitioner gave him various alibis that were not able to be verified and [that] changed at various stages after the arrest."

Trial counsel testified that he tried to verify the alibi information that the defendant had given him, but that it was either not verifiable or was inaccurate. That is an adequate explanation for not calling the alibi witnesses. None of the purported alibi witnesses testified at the habeas hearing to establish what trial counsel could have determined from an investigation or what they

would have testified about at trial. The court properly concluded that counsel was not ineffective in failing to present an alibi defense.

The judgment is affirmed.

In this opinion the other judges concurred.