## MARTIN CONDE *v.* COMMISSIONER OF CORRECTION
### (AC 28500)

Lavine, Beach and Stoughton, Js.

Argued November 21, 2008—officially released February 3, 2009

*Richard S. Cramer*, special public defender, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

STOUGHTON, J. The petitioner, Martin Conde, appeals from the judgment of the habeas court dismissing in part his second amended petition for a writ of

habeas corpus. The sole issue presented in this appeal is whether the court properly concluded that the petitioner was not deprived of effective assistance of counsel. The petitioner asserts that he was denied effective assistance because his trial counsel failed to investigate the case properly, to retain an investigator and to call and cross-examine witnesses. We disagree and, therefore, affirm the judgment of the habeas court.

The following facts and procedural history provide the necessary background for the disposition of the petitioner's appeal. The petitioner was convicted, after a jury trial, of murder as an accessory in violation of General Statutes §§ 53a-54a and 53a-8, and conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48. The petitioner appealed, and this court affirmed the judgment of conviction. *State* v. *Conde*, 67 Conn. App. 474, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

In the petitioner's direct appeal, this court determined that the jury reasonably could have found the following facts. "Late in the evening on February 15, 1996, the victim, Anthony DeJesus, also known as 'Dejon,' was standing in his former mother-in-law's kitchen at 40 East Clay Street in Waterbury, when he was gunned down in a hail of bullets fired into the house from points outside. . . .

"DeJesus, at the time of his death, was a member of the Waterbury chapter of the Nietas, a gang with roots in Puerto Rico's prison system. The [petitioner] at that time was the local president of the Nietas. DeJesus had worked for the [petitioner] selling drugs.

"DeJesus formerly had been a member of the local chapter of the Latin Kings, a larger gang whose members tended to be younger than those of the Nietas. . . . The relationship between the two gangs was cooperative rather than antagonistic; at some time prior to

the events in question, they had entered into a peace treaty.

"About one and one-half weeks prior to DeJesus' killing, several members of the two gangs met at the [petitioner's] home to discuss DeJesus. At the meeting, a conversation took place between the [petitioner] and two high ranking members of the Latin Kings. Those members were Ricky Lespier (Ricky), the president of the Meriden chapter, and Jose [DuPrey] (Red), the Waterbury regional commander. Ricky and Red expressed anger to the [petitioner] regarding a recent incident in which DeJesus had disrespected Red by going to Red's home and threatening him with a gun in front of his family. Ricky told the [petitioner] that he wanted something done because he believed that DeJesus' actions were wrong. The [petitioner] also expressed anger at DeJesus because DeJesus owed him money. The [petitioner] said he wanted DeJesus dead, and told Ricky and Red to '[g]o ahead and kill him.'

"[T]he [petitioner] . . . was tried before a jury in 1999. Several witnesses testified for the prosecution, including Julio Lugo and Enrique Adorno. Lugo was a member of the Bristol area Latin Kings who had attended the meeting at the [petitioner's] home and heard the entire conversation between the [petitioner], Ricky and Red. He also was visited on the night of DeJesus' murder by three Latin Kings members who rushed into Lugo's home and told him that they 'did Dejon.'

"Adorno, a former member of the Nietas, knew both the [petitioner] and DeJesus for several years. . . . Sometime in the winter of 1996, prior to DeJesus' death, Adorno witnessed the [petitioner] and DeJesus arguing over money, apparently because DeJesus had been selling drugs independently. The [petitioner] told DeJesus that he was tired of waiting for his money. At a party

subsequent to DeJesus' murder, the [petitioner] confided in Adorno that he had been involved in the murder and, specifically, that '[he] . . . and this Latin King guy Red said to do Dejon.' " Id., 476–78.

The jury also heard testimony regarding gang hierarchy and dynamics, and the petitioner's position of power within the Nietas. Id., 489. This court concluded on the basis of this testimony that "the jury reasonably could have inferred that the Nietas would have retaliated had the Latin Kings not sought approval for the killing first . . . ." Id.

Following his unsuccessful direct appeal, the petitioner brought this petition for a writ of habeas corpus. In his second amended petition, the petitioner claimed that his trial counsel provided ineffective assistance because he failed (1) to object to the petitioner's being tried before the jury in leg irons and seated in such a way as to permit the jury to observe that he was shackled, (2) to investigate the case properly, to retain an investigator and to call and cross-examine witnesses, (3) to cross-examine the state's chief witness in a way that would not have elicited harmful testimony and (4) to file a petition for sentence review. In its memorandum of decision, the court dismissed the petition under the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), except for the petitioner's claim regarding his right to sentence review.[1] The court rendered judgment accordingly and granted certification to appeal as to the dismissed claims. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the petitioner claims that the court improperly dismissed his claim that he was denied

---

[1] The court restored the petitioner's right to apply for sentence review after determining that trial counsel's performance was deficient for failing to file an application for sentence review on behalf of the petitioner, which resulted in "actual prejudice" to the petitioner.

effective assistance because his trial counsel failed to investigate the case adequately, to retain an investigator and to call and cross-examine witnesses.[2] Specifically, the petitioner contends that trial counsel's performance was deficient because a proper investigation would have revealed that several witnesses were available who would have provided testimony helpful to the defense, namely, that (1) DeJesus was not a member of the Nietas and therefore there was no reason for members of the Latin Kings to seek permission from the petitioner to punish DeJesus and (2) the meeting at the petitioner's house, at which the petitioner allegedly gave his approval of DeJesus' murder, never took place. We disagree.

"[W]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Dwyer* v. *Commissioner of Correction*, 69 Conn. App. 551, 561, 796 A.2d 1212, cert. denied, 261 Conn. 906, 804 A.2d 212 (2002). To prevail on a claim of ineffectiveness of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; *Strickland* v. *Washington*, supra, 466 U.S. 687–88; and (2) that defense counsel's deficient performance prejudiced the defense. Id., 694. "Because the petitioner must satisfy both prongs of the *Strickland* test to prevail on a habeas corpus petition, this court may dispose of the petitioner's claim if he fails to meet either prong." (Internal quotation marks

---

[2] On appeal, the petitioner does not claim that trial counsel was ineffective for failing to object to the petitioner's being tried before the jury in leg irons and seated in such a way as to permit the jury to observe that he was shackled or for failing to cross-examine the state's chief witness in a way that would not have elicited harmful testimony. Therefore, these claims were abandoned.

omitted.) *Dwyer* v. *Commissioner of Correction,* supra, 560.

At the habeas trial, the petitioner called several witnesses, including Beverly Bruno, the former wife of DeJesus;[3] Enrique Lopez, a member of Nietas during the 1990s; Virgin Arroyo, DeJesus' sister; and Jose DuPrey, the Waterbury regional commander of the Latin Kings at the time of DeJesus' death. The petitioner contends that trial counsel's assistance was ineffective because he did not adequately question Bruno, who was a witness for the state at the petitioner's criminal trial, and because he failed to call DuPrey, Lopez and Arroyo as witnesses during the underlying criminal trial.

The petitioner first argues that because trial counsel failed to ask Bruno if DeJesus was a member of the Nietas during his criminal trial, he did not receive adequate assistance of counsel. Bruno testified at the habeas trial that had she been asked such a question, she would have stated that DeJesus was not a member of the Nietas. This information, the petitioner asserts, would have helped the defense because it would have undermined the state's case severely; namely, if DeJesus was not a member of the Nietas, there would be no reason for the Latin Kings to discuss his punishment with the petitioner. The habeas court determined, however, that because the petitioner presented no evidence that he ever informed his trial counsel that DeJesus was not a member of the Nietas, there was "no reason for defense counsel to have asked the state's [witness] that question."

The petitioner also asserts that Lopez, Arroyo and DuPrey should have been called as witnesses by trial counsel in the underlying criminal trial because their

---

[3] Bruno was divorced from the victim prior to his death; however, she used her married name, DeJesus, when she testified at the petitioner's criminal trial.

testimony would have been helpful to the defense. Lopez and Arroyo testified at the habeas trial that had they been called during the petitioner's criminal trial, they, too, would have testified that DeJesus was not a member of the Nietas. DuPrey stated during the habeas trial that, had he been called at the petitioner's criminal trial, he would have testified that the meeting at the petitioner's home, where the petitioner allegedly consented to DeJesus' murder, never took place. The court found that the claim that Lopez and Arroyo should have been called as witnesses was without merit because "there was no evidence presented that the petitioner ever informed his trial defense counsel that [DeJesus] was not a Nietas member," and "the argument that trial defense counsel should have called [DuPrey] as a witness is not valid because there was no evidence presented in the habeas case that the petitioner ever informed his attorney that the meeting never took place at the petitioner's home."

The court further concluded that trial counsel "made the strategic choice of attempting to convince the jury that the meeting had not taken place in his effective cross-examination of the state's chief witness" and that "under all the circumstances, the petitioner has failed to rebut the presumption that the action of his defense attorney would be considered sound trial strategy . . . ." The court therefore determined that the petitioner's claim that trial counsel's assistance was deficient failed on the first prong of the *Strickland* test.

"The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." (Internal quotation marks omitted.) *Jean-Jacques* v. *Commissioner of Correction*, 73 Conn. App. 742, 750, 809 A.2d 541 (2002). "The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing

the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it." *State* v. *Talton*, 197 Conn. 280, 297–98, 497 A.2d 35 (1985); see also *Tatum* v. *Commissioner of Correction*, 66 Conn. App. 61, 66, 783 A.2d 1151, cert. denied, 258 Conn. 937, 785 A.2d 232 (2001). "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner of Correction*, 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002). After a thorough review of the record, we agree with the court that the petitioner has not met his burden of demonstrating that trial counsel's performance was deficient; the petitioner has not shown that he made trial counsel aware of a witness who would have assisted in the defense at trial or that the strategy employed by trial counsel was unreasonable.

The judgment is affirmed.

In this opinion the other judges concurred.