## SHAWN ROBINSON *v.* COMMISSIONER OF CORRECTION
### (AC 31197)

Harper, Beach and Schaller, Js.

Argued February 22—officially released June 28, 2011

*Tennyson S. Anthony*, special public defender, for the appellant (petitioner).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Brenda L. Hans*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Shawn Robinson, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims that the court (1) abused its discretion in denying certification to appeal, (2) erred in rejecting his claim that his trial counsel had provided ineffective assistance and (3) erred in concluding that he was not entitled to certain impeachment information at his criminal trial. We dismiss the appeal.

Following a jury trial, the petitioner was convicted of assault in the second degree in violation of General Statutes § 53a-60 (a) (5), rioting at a correctional institution in violation of General Statutes § 53a-179b and possession of a weapon or dangerous instrument in a correctional institution in violation of General Statutes § 53a-174a. He also was convicted of being a persistent serious felony offender pursuant to General Statutes § 53a-40 (b). He was sentenced to a total effective term of forty-five years incarceration. The petitioner directly appealed from the judgment of conviction to the Supreme Court pursuant to General Statutes § 51-199 (b) (3). The Supreme Court affirmed his conviction. *State* v. *Robinson*, 227 Conn. 711, 631 A.2d 288 (1993).

In its opinion, the Supreme Court set forth the following facts. "On April 19, 1990, at approximately 8:30 p.m.,

the [petitioner] attended a gathering of seventy-five to one hundred inmates in the east mess hall of the Connecticut Correctional Institution at Somers in honor of the Islamic religious feast, Ramadan. The gathering turned into a riot when an inmate verbally confronted and then placed his hands on the Imam, a religious leader. Inmates began to shout, climb on tables, fight, and throw trays. Thirty-five correction officers responded in an attempt to restore order. During the incident, the [petitioner], while situated at the center of the group of rioting inmates, slashed correction officer David Serkosky on the right side of his neck with a sharp metal instrument. The [petitioner] then put the instrument into a paper bag, and walked away from the crowd and toward the east wall of the mess hall. . . .

"[Correction] [o]fficer Ronnie King testified that from a distance of approximately five feet he had seen the [petitioner] walk around Serkosky and with his right hand cut Serkosky in the neck. He then saw the [petitioner] put a shiny metal object into a paper bag and then step against a wall. King testified that the incident had occurred quickly. Serkosky testified that he had been cut while standing in the center of the group of inmates who had been involved in the disturbance. Serkosky did not see who slashed him, nor did he see the [petitioner] at any time during the incident."[1] Id., 715.

After his unsuccessful appeal, the petitioner brought this petition for a writ of habeas corpus, claiming, inter alia, that (1) his trial counsel, Brian Karpe, was deficient for failing to call certain witnesses to testify at trial and (2) that his conviction was unreliable because the trial court refused to release the personnel record of a correction officer who testified against him at his criminal

---

[1] Two other correction officers testified. *State* v. *Robinson*, supra, 227 Conn. 715–16. One testified that from approximately forty feet away he saw the petitioner hold a dark object in his hand; the other testified as to the events which occurred directly after the incident. Id., 716.

trial. In its memorandum of decision, the court rejected his claims and denied his petition. The petitioner filed a petition for certification to appeal from the judgment of the habeas court, which the habeas court denied. This appeal followed. Additional facts will be set forth as necessary.

We first set forth the applicable standard of review. "When confronted with a denial of certification to appeal, we must determine whether this ruling constituted an abuse of discretion. . . . A petitioner satisfies that substantial burden by demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If the petitioner can show that the habeas court abused its discretion in denying the petition for certification to appeal, then the petitioner must demonstrate that the judgment of the habeas court should be reversed on its merits. . . . To determine whether the court abused its discretion, we must consider the merits of the petitioner's underlying claims." (Internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 123 Conn. App. 121, 126–27, 2 A.3d 29, cert. denied, 298 Conn. 929, 5 A.3d 489 (2010).

I

We first address the petitioner's claim that the court erred in concluding that Karpe was not ineffective for failing to call as exculpatory witnesses at trial William Outlaw and Vaughn Outlaw, prisoners who allegedly were present during the incident. We disagree.

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court adopted a two part analysis for claims of ineffective assistance of counsel. Under *Strickland*, the petitioner must show that: (1) defense counsel's

representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for defense counsel's deficient representation, the result of the proceeding would have been different." (Internal quotation marks omitted.) *DuPerry* v. *Kirk*, 90 Conn. App. 493, 503, 877 A.2d 928 (2005), cert. denied, 277 Conn. 921, 895 A.2d 795 (2006).

"The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citations omitted; internal quotation marks omitted.) *Conde* v. *Commissioner of Correction*, 112 Conn. App. 451, 457–58, 963 A.2d 1007 (2009).

We agree with the court that the petitioner has not met his burden of demonstrating that Karpe's performance was deficient.[2] The court credited Karpe's testimony and specifically highlighted the following. Karpe testified that he hired a private investigator, who had interviewed a number of witnesses, including William Outlaw and Vaughn Outlaw. Karpe testified that he called witnesses who he thought would provide credible and relevant testimony. Karpe reasoned that he had not

---

[2] The court stated that it need not address the prejudice prong where the petitioner had not met his burden of proving deficient performance.

called William Outlaw as a witness at trial because Karpe thought his criminal record could be used to impeach him; he might invoke his fifth amendment privilege against self-incrimination; his statement might conflict with the petitioner's own testimony; he did not actually see the stabbing; and calling him as a witness would "potentially cast a bad light [on the petitioner] in front of the jury."

Karpe testified that he did not call Vaughn Outlaw as a witness at trial because he might invoke his fifth amendment privilege against self-incrimination as a result of the fact that he might be charged with rioting if he admitted that he was present during the riot; his statement was in "direct conflict" with that of the petitioner; and Vaughn Outlaw's criminal record might be used to impeach him.

We conclude that the petitioner's claim fails under the first prong of *Strickland*. The habeas court reasonably could have found that the petitioner failed to demonstrate that Karpe's decision not to call William Outlaw and Vaughn Outlaw as witnesses in his criminal trial was anything other than sound trial strategy.

## II

The petitioner next claims that the court erred in concluding that he was not entitled to impeachment information from the personnel file of King, a correctional officer who was the state's only witness to the stabbing. The respondent, the commissioner of correction, argues that the petitioner's claim is barred by the doctrine of res judicata. We agree with the commissioner.

"The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have

been made. . . . The doctrine . . . applies to criminal as well as civil proceedings and to state habeas corpus proceedings. . . . However, [u]nique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner. . . . Specifically, in the habeas context, in the interest of ensuring that no one is deprived of liberty in violation of his or her constitutional rights . . . the application of the doctrine of res judicata . . . [is limited] to claims that actually have been raised and litigated in an earlier proceeding." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 63–64, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011).

Prior to the start of his criminal trial, the petitioner subpoenaed the personnel records of certain correction officers, including King. The petitioner specifically sought, with respect to King, any references to past complaints made by King against the petitioner that were recorded in King's personnel file. The court stated that it would conduct an in camera review of the file and disclose any references therein to the petitioner or to the incident. After conducting an in camera review of King's personnel file, the court concluded that the file contained no reference to the petitioner and contained nothing that reasonably could be used by the petitioner to impeach King. The court stated that the entire personnel file would remain sealed and that "there is nothing in here that would be of help to you."

On direct appeal to the Supreme Court, the petitioner argued that the trial court improperly refused to disclose the contents of the personnel records of, inter alios, King, and that without access to King's personnel file, he was denied his constitutional right to information with which to confront the witnesses against him. The Supreme Court rejected the claim, reasoning that

the claim "is conditioned . . . on this court reviewing the records that were the subject of the trial court's in camera examination and discovering information that the trial court should have given to him at trial. . . . Our review of the personnel files in question reveals that the trial court did not abuse its discretion in withholding any information in those files." *State* v. *Robinson*, supra, 227 Conn. 745.

In his habeas petition, the petitioner argued, inter alia, that his conviction was unreliable and that the jury was denied crucial information because the court, after conducting an in camera review of King's personnel file, kept King's personnel file sealed, stating that it did not discover any materials that were exculpatory or of impeachment value to the petitioner.[3] The petitioner argued, however, that a performance appraisal of King, dated May 24, 1985, contained information that would have impacted King's credibility. In its memorandum of decision, the court implicitly ruled that the petitioner's claim was barred by res judicata.[4] On appeal to this court following the denial of his petition for certification to appeal, the petitioner claims that the habeas court erred when it determined that he was not entitled to relevant impeachment information from King's personnel file. He argues that "the court should have disclosed the requested documents because they were material and relevant to the reliability of . . . King's testimony as the only witness to identify the petitioner as the one who stabbed . . . Serkosky."

---

[3] Following an in camera review of the material at issue, "[t]he trial court must make available to the defendant only that material that it concludes is clearly material and relevant to the issue involved." (Internal quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 337, 618 A.2d 32 (1992).

[4] The issue was before the court in that the commissioner pleaded res judicata as an affirmative defense in its amended return. Although the court did not specifically use the term "res judicata," it employed reasoning associated with the use of the doctrine and stated that the issue raised in the habeas petition had been decided previously by the Supreme Court on direct appeal.

The doctrine of res judicata bars the petitioner from obtaining habeas review of this claim because the claim had been raised, litigated and decided on direct appeal. Before the habeas court, and on appeal before us, the petitioner argues that King's personnel file contained information that was relevant at his criminal trial for impeachment purposes and that the trial court improperly denied him access to the file. The Supreme Court on direct appeal, however, already had determined that the trial court did not abuse its discretion by withholding any information in the files requested by the petitioner, which included King's personnel file. *State* v. *Robinson*, supra, 227 Conn. 745. The habeas court properly declined to relitigate this claim.

In light of the foregoing and upon our examination of the record and the court's resolution of the issues presented in the amended habeas petition, we are not persuaded that the court abused its discretion by denying the petition for certification to appeal. The petitioner has not demonstrated that the issues presented are debatable among jurists of reason, that a court could resolve the issues differently, or that the questions presented warrant encouragement to proceed further. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

The appeal is dismissed.

In this opinion the other judges concurred.