******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JULIO MORQUECHO *v.* COMMISSIONER
OF CORRECTION
(AC 37461)

DiPentima, C. J., and Beach and Mullins, Js.

*Submitted on briefs February 10—officially released April 19, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Walter C. Bansley IV*, assigned counsel, filed a brief
for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, *Stephen J.
Sedensky III*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, filed a brief for
the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Julio Morquecho, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal, that the denial of his amended petition for a writ of habeas corpus was improper because his trial counsel provided ineffective assistance in failing to call certain witnesses during his criminal trial, and that he was prejudiced as a result.[1] We dismiss the appeal.

The habeas court set forth the following factual and procedural history.[2] "Although the petitioner and the victim were never married, they had a long-term relationship that produced two children. They moved together from Ecuador to Danbury.

"In the spring of 2005, the victim became involved romantically with a coworker. When the petitioner found out about the relationship, he became angry and threatened to kill the coworker. The victim became afraid of the petitioner and moved out of the apartment where she had been living with him. The petitioner stalked her and made numerous threats. After spending some time in prison for violating a restraining order, the petitioner was released on April 13, 2006. Shortly thereafter, the petitioner made threats to kill the victim.

"The victim was murdered in the early morning hours of April 20, 2006, between 1:40 a.m. and 6 a.m., when she was found by the police outside her home with her throat slit. The victim had left work at 1 a.m. and drove [another coworker] home, dropping the coworker off at 1:40 a.m.

"At the time of the murder, the petitioner lived with family in Danbury only a few minutes from the victim's home. Police interviewed the petitioner and members of his household as to the petitioner's whereabouts on the night of the murder. Neither the petitioner nor his family members could confirm that the petitioner was at home asleep from 1:40 to 3 a.m., the time of the murder, because they too were asleep.

"There was no direct evidence connecting the petitioner to the murder. The state's case was based entirely on circumstantial evidence. . . . The petitioner's first trial resulted in a hung jury.

"[The petitioner's trial counsel] Attorney [Jeffrey] Hutcoe, was aware that the petitioner claimed that he was home in bed at the time of the murder. He was also aware from the police reports, the arrest warrant and conversations with two of the petitioner's housemates, that no one saw the petitioner between the hours of 11 p.m. on April 19, 2006, to 3 a.m. on April

20, 2006, because they were asleep.

"Attorney Hutcoe did not pursue an alibi defense because the defense could not be supported by credible and reliable eyewitness evidence that the petitioner was home asleep from 11 p.m. to 3 a.m. and could not have committed the murder." (Footnote omitted.)

After his second trial, the petitioner was found guilty of murder in violation of General Statutes § 53a-54a (a). The court sentenced him to fifty-five years of incarceration. On appeal, this court affirmed the conviction. See *State* v. *Morquecho*, 138 Conn. App. 841, 842, 54 A.3d 609, cert. denied, 307 Conn. 941, 56 A.3d 948 (2012).

On October 16, 2014, the petitioner filed a request for leave to file an amended petition for a writ of habeas corpus alleging, inter alia, ineffective assistance of trial counsel. The request for leave was granted, and on November 4, 2014, the habeas court, *Cobb*, *J.*, held a trial in which it heard testimony from three witnesses: (1) the petitioner; (2) his brother, Carlos Morquecho (Carlos); and (3) Hutcoe.

The petitioner testified that on the evening of April 19, 2006, he was at home with several people who were either family members or housemates. After dinner, at varying hours, certain individuals went to sleep in their respective rooms. The petitioner testified that he went to sleep at approximately 11 p.m. on a mattress located in the living room. One of the petitioner's housemates also slept in the living room approximately three or four feet away. The petitioner estimated that his housemate fell asleep about twenty minutes after he had gone to bed. The petitioner asserted that he never left the home that evening.

Carlos also testified to what transpired on the evening of April 19, 2006. Carlos testified that he returned from work at 6:30 p.m. After dinner, the petitioner and Carlos spoke until 10 p.m. when Carlos went to bed. Carlos also testified to going to the bathroom at some point between 1 a.m. and 1:30 a.m. and seeing the petitioner asleep. On cross-examination, the state pressed and attempted to impeach Carlos' testimony regarding this timeline.[3] Nonetheless, Carlos asserted that he did not hear anyone leave the house that night, and that the next time he saw the petitioner was at 6 a.m.

Hutcoe explained why he did not call an alibi witness and pursue an alibi defense. Hutcoe testified that he believed that the petitioner had a "strong case," as "evidenced in the first trial," which resulted in a hung jury. Hutcoe acknowledged that there were four potential alibi witnesses. He, however, did not want to "pollute [the petitioner's case] with very weak witnesses who were going to change their stories in front a jury, witnesses who [Hutcoe] knew had told the police . . . we cannot tell you that [the petitioner] was in the house or not." Although Hutcoe interviewed only two of the

four potential witnesses, he concluded that, on the basis of his investigation coupled with statements made by all the witnesses to the police, "none of [the witnesses] could say that [the petitioner] was in the house at 1:40 [a.m.] to 2:15 [a.m.] which was the critical juncture in time." Moreover, according to Hutcoe, the time frames provided to the police by the witnesses did not help the petitioner. Consequently, Hutcoe "was not going to suddenly put someone on the stand that suddenly now is going to change their story to help [the petitioner], have them be cross-examined and beaten up about it, and basically destroy, in [Hutcoe's] mind, whatever chance [the petitioner] had to win the case."[4] In short, Hutcoe believed he did not have any reliable and credible witnesses who could testify that the petitioner was at home during the time of the murder.

On November 12, 2014, the habeas court issued a memorandum of decision denying the petition for a writ of habeas corpus. Eight days later, the petitioner filed a petition for certification to appeal, which was denied by the habeas court on November 24, 2014. This appeal followed.

As an initial matter, we set forth the standard of review relevant to our resolution of this appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Rosado* v. *Commissioner of Correction*, 129 Conn. App. 368, 371–72, 20 A.3d 85, cert. denied, 302 Conn. 916, 27 A.3d 368 (2011).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel . . . to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas

appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . *Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 429–30, 17 A.3d 1089, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

"To satisfy the performance prong [of the *Strickland* test] . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 294–95, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Orellana* v. *Commissioner of Correction*, 135 Conn. App. 90, 98, 41 A.3d 1088, cert. denied, 305 Conn. 913, 45 A.3d 97 (2012). Accordingly, to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, we must consider the merits of the petitioner's underlying claim that Hutcoe provided ineffective assistance.

The petitioner claims that the habeas court erred in concluding that Hutcoe provided effective assistance of counsel despite not calling alibi witnesses. Specifically, he contends that four witnesses could have provided an alibi, namely, that he was at home at the time of the murder. We are not persuaded.

"The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. Defense counsel will be deemed ineffective only when it is shown that a defendant has informed

his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction*, 129 Conn. App. 699, 703, 21 A.3d 901, cert. denied, 302 Conn. 921, 28 A.3d 342 (2011).

Concluding that Hutcoe's "decision not to call these witnesses and pursue an alibi defense was reasonable and constituted sound trial strategy," the habeas court credited the testimony of Hutcoe at the habeas trial. Hutcoe testified that he knew of the petitioner's claim that he was at home at the time of the murder. Notwithstanding the petitioner's assertion, Hutcoe concluded that no witness could establish that the petitioner was at home during the critical time frame. Moreover, we note that the petitioner's first criminal trial resulted in a hung jury, lending credence to Hutcoe's decision not to present "weak witnesses" who could tarnish the petitioner's defense during his second criminal trial. Thus, as explained by the habeas court, Hutcoe "did not pursue an alibi defense because the defense could not be supported by credible and reliable eyewitness evidence that the petitioner was home asleep from 11 p.m. to 3 a.m. and could not have committed the murder."

In contrast, the petitioner and his brother testified that he was at home during the time the murder occurred. The habeas court found that the petitioner and his brother's testimony at the habeas trial were not credible. "This court does not retry the case or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 317, 34 A.3d 1046 (2012). On the basis of the testimony and evidence presented at the habeas trial, we conclude that the habeas court reasonably concluded that Hutcoe's decision not to call the witnesses and pursue an alibi defense was reasonable and constituted sound trial strategy. Accordingly, we agree with the habeas court that the petitioner failed to demonstrate that Hutcoe's performance was deficient, and we further conclude that the petitioner's claim fails under the first prong of *Strickland*.[5]

On the basis of the foregoing, we conclude that the petitioner has not demonstrated that any issue raised with regard to the court's denial of his petition for a writ of habeas corpus is debatable among jurists of reason, that a court could resolve any such issue in a different manner, or that any question raised deserves encouragement to proceed further. Having failed to sat-

isfy any of these criteria, the petitioner cannot demonstrate that the court abused its discretion in denying the petition for certification to appeal. See *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994).

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Because our resolution of the petitioner's first claim is dispositive of the appeal, we do not reach the petitioner's claim of prejudice.

[2] A detailed recitation of the facts as reasonably found by the jury can be found in *State* v. *Morquecho*, 138 Conn. App. 841, 842–46, 54 A.3d 609, cert. denied, 307 Conn. 941, 56 A.3d 948 (2012).

[3] The colloquy between Carlos and counsel for the respondent, the Commissioner of Correction, was as follows:

"[The Respondent's Counsel]: Do you remember speaking to the police and telling the police that you saw your brother the night of the murder, about ten o'clock you went to bed, right?

"[Carlos]: Yes.

"[The Respondent's Counsel]: And do you remember telling the police you got up at about three in the morning and went to the bathroom and saw him then?

"[Carlos]: It could have been any time between one thirty to three . . . in the morning, you know, when you wake up like that you don't really know.

"[The Respondent's Counsel]: Okay. And in fact, yesterday you told my investigator that you saw your brother at one o'clock in the morning, right?

"[Carlos]: One thirty, I said.

"[The Respondent's Counsel]: No. You said one. And when he told you that that was still time to get out and kill [the victim], you said, well, maybe about one thirty.

"[Carlos]: No, because that was the time that I got up to go to the bathroom.

"[The Respondent's Counsel]: You told the police three o'clock, correct?

"[Carlos]: No. One thirty, I said."

[4] At the habeas trial, when Hutcoe was cross-examined by the petitioner's habeas counsel, Hutcoe succinctly explained his decision to not pursue an alibi defense. The colloquy was as follows:

"[The Petitioner's Counsel]: So, there was an alibi, a defense, and that's really what it was.

"[Hutcoe]: Well, except—of course to be somewhere else, he can't be there. The murder was pretty clearly committed between 1:40 [a.m.] and, let's say, 2:10 [a.m.] That was clear to everybody. That's the start of an answer. So, if he was somewhere else from 1:40 [a.m.] to 2:10 [a.m.], then that would have been very helpful if it was believed by a jury.

"Now, all these witnesses had been interviewed by the police, and when they had the opportunity to say it at that juncture of time, they all didn't. They said, well, ten, well, twelve, I got up at three, I left at four. [One of the housemates] changed his story twice—I wasn't home at all, then I was home the next day. We didn't go anywhere. So, not one of them would have been believable in front of the jury."

[5] Because the petitioner has not met his burden of satisfying the first *Strickland* prong, we need not address his prejudice claim. See *King* v. *Commissioner of Correction*, 73 Conn. App. 600, 602–603, 808 A.2d 1166 (2002) ("[b]ecause both prongs of the *Strickland* test must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong"), cert. denied, 262 Conn. 931, 815 A.2d 133 (2003).