******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ANGEL C. *v.* COMMISSIONER OF CORRECTION*
## (AC 46052)

Suarez, Seeley and Vertefeuille, Js.

### *Syllabus*

The petitioner, who had previously been convicted of sexual assault and risk of injury to a child in connection with the sexual abuse of his stepdaughter, sought a writ of habeas corpus, claiming that his criminal trial counsel, J, had provided ineffective assistance by failing to contact his two minor children to investigate whether they could support the petitioner's theory of consent and that she failed to call his children as witnesses at the criminal trial. The petitioner's theory of defense during his criminal trial was that he had a consensual relationship with his stepdaughter and that the sexual activity occurred after she was sixteen years old. During the habeas trial, the petitioner attempted to offer testimony from his now adult children to support his claim of deficient performance. The respondent, the Commissioner of Correction, objected to the children's testimony on the ground of relevance, and the habeas court sustained the objection. The habeas court thereafter denied the petition and, on the granting of certification, the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in precluding the petitioner's children from testifying at the habeas trial: the petitioner's counsel failed to articulate for the habeas court any substantive facts that the children would be expected to discuss during their testimony, and the petitioner, for the first time on appeal, argued that his children would "presumably" have testified as to certain topics, without articulating the specific exculpatory information each child would have been able to testify to at the habeas trial; moreover, there was no merit to the petitioner's claim that the habeas court should have looked to the broader record when considering the relevance of the children's testimony, specifically, that the testimony of the petitioner's former wife and the children's mother, who testified at the habeas trial just before the petitioner's counsel attempted to present the children's testimony, would have made their testimony relevant, as the petitioner's habeas counsel never articulated a connection between the former wife's testimony and the children's potential testimony.

2. The habeas court did not err in denying the petition for a writ of habeas corpus: the petitioner failed to overcome the presumption that, under the

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

circumstances, J's performance was within the wide range of reasonable professional assistance and was not deficient; moreover, the testimony of a private investigator, who worked alongside J, as well as the petitioner's own testimony, established that the petitioner did not provide J with any reference to any witnesses who had exculpatory evidence, and, given that the defense was based on a theory of consent, even if J had interviewed and learned of the substance of the testimony of the petitioner's children, it was objectively reasonable to conclude that calling them as witnesses was unnecessary and inconsistent in light of that strategy; furthermore, even assuming that J's performance was deemed deficient, the petitioner failed to demonstrate that such deficiency prejudiced him, as the petitioner failed to demonstrate that there was a reasonable probability that, but for the J's deficient performance, the result of the proceedings would have been different.

Argued January 18—officially released July 23, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *M. Murphy, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Cheryl A. Juniewic*, assigned counsel, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Sharmese Hodge*, state's attorney, and *Erin Stack*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SUAREZ, J. Upon a grant of certification to appeal, the petitioner, Angel C., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the habeas court (1) abused its discretion in precluding him from presenting the testimony of his adult children at the habeas trial, and (2) improperly concluded that he had not established that his trial counsel was ineffective

for having failed to contact and call his children as witnesses at the underlying criminal trial. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to the petitioner's claims. In 2009, following a jury trial, the petitioner was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1), and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). The court, *Dewey, J.,* imposed a total effective sentence of thirty years of incarceration, ten years and nine months of which were mandatory. Prior to and throughout his criminal trial, the petitioner was represented by Attorney Claudia Jones, a public defender. The petitioner subsequently brought a direct appeal to this court, which affirmed the judgment of conviction. *State* v. *Angel C.,* 137 Conn. App. 84, 87, 46 A.3d 1020, cert. denied, 307 Conn. 916, 54 A.3d 180 (2012).

In its decision affirming the judgment of conviction, this court set forth the following facts that the jury reasonably could have found: "In 1996, when the female victim was six years of age, the [petitioner] and the victim's mother [B] began a long-term romantic relationship while living in Peru. The [petitioner] and [B] later had two children together, moved to East Hartford and were married. The victim lived at the family residence with her half-siblings, [B] and the [petitioner]. The [petitioner] exercised a great deal of influence and control over what occurred in the household, such that the victim was subservient to him and feared him. From the time that the victim was ten years of age, the [petitioner] forcibly engaged in frequent and secretive sexual activities with her. These activities began with the [petitioner] touching the victim's private parts over her clothing

with his hands and penis. They escalated to the [petitioner] digitally penetrating the victim's vagina. The [petitioner] compelled the victim to view pornography and to masturbate him. Finally, from the time that the victim was fourteen years of age until she was eighteen years of age, the [petitioner] engaged in penile-vaginal intercourse with the victim on nearly a daily basis.

"For many years, the victim, who was emotionally traumatized by the [petitioner's] assaultive conduct, did not bring the [petitioner's] activities to light because of the [petitioner's] role as the head of the family, her fear that doing so would tear the family apart and her fear that the [petitioner] would abuse her siblings. Additionally, the [petitioner] often told the victim that he loved her and bought gifts for her. When the victim was a senior in high school, she began to experience panic attacks. During an ensuing psychiatric evaluation, she revealed the sexual abuse committed by her stepfather, the [petitioner]. The [petitioner's] arrest followed."[1] Id., 86–87.

On December 16, 2016, the petitioner filed a petition for a writ of habeas corpus. On June 4, 2021, the petitioner, represented by counsel, filed an amended petition alleging that Attorney Jones rendered ineffective assistance during his criminal trial.[2] On June 7, 2021,

___

[1] "At [the criminal] trial, the [petitioner] testified, in relevant part, that he had sexual intercourse with the victim on nearly a daily basis after she became sixteen years old. He testified that the victim initiated the relationship and that the victim falsely accused him of sexual assault because she sought attention and was upset with his decision to end the relationship." *State* v. *Angel C.*, supra, 137 Conn. App. 87 n.2.

[2] Specifically, the petitioner alleged that Attorney Jones' performance was deficient in that she "(a) failed to secure, subpoena or otherwise arrange to have witnesses know[n] to the trial counsel available for trial to provide exculpatory testimony on behalf of the petitioner who would have undermined the credibility of the state's witnesses and who would have provided testimony which would have been helpful in supporting and/or corroborating the petitioner's defense; (b) failed to offer and/or submit into evidence letters from the petitioner's ex-wife that would have demonstrated to the jury that he was innocent of the charges; (c) failed to utilize a specialized Spanish

the respondent, the Commissioner of Correction, filed a return, leaving the petitioner to his proof with respect to his claims of ineffective assistance of counsel.

On April 25, 2022, the court, *M. Murphy, J.*, held a trial on the habeas petition. The petitioner presented his own testimony, as well as testimony from Forte Ruscito, a public defender investigator who assisted Attorney Jones on the case; B, his former wife and the mother of the victim; and Gisella C., one of his sisters. Attorney Jones did not testify, as she was deceased at the time of the habeas trial. The petitioner attempted to offer testimony from his now adult children[3] to support his claim that Attorney Jones rendered deficient performance because she never contacted the children to investigate whether they could support the defendant's theory of consent and she failed to call them as

interpreter in her dealings and representation of the petitioner during the course of his criminal matters and throughout the course of the trial proceedings; (d) failed to meaningfully explain the plea offer to the petitioner by not advising the petitioner and ensuring that the petitioner understood the strength of the state's evidence, the elements of the offense, potential defenses, the chances of acquittal and actual exposure upon a conviction of charges, knowing the petitioner's educational limitations and the language barrier; (e) failed to adequately investigate the petitioner's family members, friends, as well as the [victim] and her family members and friends who could have testified concerning the events surrounding the offenses; (f) failed to offer into evidence at trial any expert testimony, medical testimony or documentation of the complaining victim's history of mental impairment, disabilities and/or previous sexual activity; (g) failed to retain expert witnesses for the defense to counter the state's evidence and/or testimony of its witnesses at trial; [and] (h) failed to conduct an adequate investigation of the state's cases in the preparation of the petitioner's criminal trial." Although, as we explain subsequently in this opinion, the court rejected all of the petitioner's claims of ineffective assistance of counsel, the petitioner, in this appeal, challenges only the habeas court's rejection of his claim that Attorney Jones was ineffective in that she failed to investigate his two children during her preparation of the defense and that she failed to present their testimony at the criminal trial.

[3] The record reflects that the petitioner has three other children, who resided in Peru at the time of the criminal trial. He has two children with B whose testimony he attempted to introduce at the habeas trial. We refer only to these two children in this opinion.

witnesses at the criminal trial. The respondent objected to their testimony on the ground of relevance, and the habeas court sustained the objection. In addition to the testimony that was offered by the petitioner, the parties also introduced numerous exhibits, including a certified copy of the trial court file and the transcripts from the underlying criminal proceedings. After the conclusion of the evidence, the petitioner and the respondent filed posttrial briefs.

On October 12, 2022, the court issued a memorandum of decision in which it denied the habeas petition. With respect to each claim, the court concluded that the petitioner failed to prove deficient performance of trial counsel. The court also concluded that, even if trial counsel had performed deficiently, the petitioner had failed to prove that he was prejudiced thereby.[4] Thereafter, the petitioner filed a petition for certification to appeal from the denial of the amended petition for a writ of habeas corpus, which the court granted. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The petitioner first claims that the habeas court abused its discretion by precluding the testimony of two of his now-adult children on relevancy grounds. The petitioner argues that, in light of the evidence that he presented to the court during the habeas trial before calling the children to testify, particularly the testimony of B, the habeas court should have taken a particularly broad view of the relevance of the children's testimony as set forth in his proffer. We are not persuaded.

---

[4] On March 24, 2023, the petitioner filed a motion for articulation regarding a variety of issues. Relevant to this appeal, the petitioner sought an articulation with respect to the court's ruling to preclude him from presenting the testimony of his adult children. The respondent filed an opposition to this motion on March 31, 2023, and, on April 18, 2023, the habeas court denied the motion.

At the habeas trial, the petitioner presented evidence of the following facts relevant to this claim. B is the petitioner's former spouse. The petitioner and B have two children together, a daughter and a son, who were eleven and nine years of age, respectively, during the underlying criminal trial. The two children were not contacted for investigative purposes by Attorney Jones during the course of her representation of the petitioner, nor were they called as witnesses at their father's criminal trial. At the habeas trial, the petitioner sought to present testimony from his children in an attempt to demonstrate that Attorney Jones' failure to investigate them in preparing the defense and failure to present their testimony at the criminal trial amounted to deficient performance that prejudiced his defense. When the petitioner's counsel called the petitioner's son as a witness, the respondent objected to his testimony on the ground of relevance. The following colloquy between the court, the petitioner's counsel, and the respondent's counsel took place:

"[The Respondent's Counsel]: Your Honor, just briefly before we get started, we are asking for an offer of proof about this witness before he testifies. He did not testify at the criminal trial. He was a minor when the allegations were—when the allegations happened. So, we're just asking for an offer of proof as to what the relevance is.

"The Court: All right. So—so, Mr.—you can take a seat for a minute while I hash this out with the attorneys. So, [Petitioner's Counsel], is this one of the children of—

"[The Petitioner's Counsel]: Yes, Your Honor.

"The Court: [The petitioner]?

"[The Petitioner's Counsel]: Yes, Your Honor.

"The Court: All right. And what's the offer of proof of this young man, what he's going to say?

"[The Petitioner's Counsel]: Well, the offer would be simply, Your Honor, really, you know, as you know, Your Honor, any criminal trial doesn't matter how old a possible witness is but there is a duty of an attorney to, at least, contact the person and discuss with them what they know or don't know even—just because he was underage doesn't mean anything really, as you know.

"The Court: So—so—so, get to your point.

"[The Petitioner's Counsel]: It's whether or not—

"The Court: What is the offer of proof? What do you expect him to testify about that's going to be helpful to me as the [trier] of fact?

"[The Petitioner's Counsel]: That he wasn't contacted by Attorney Jones basically.

"The Court: And what is he going to say that he would have had information that—what information would he have had that would have helped Attorney Jones?

"[The Petitioner's Counsel]: Well, whether he had knowledge of the allegations.

"The Court: All right. So, that's not good enough. That offer of proof is—is—it's not, you know, I'm not finding that he has anything that's relevant here today that's going to help me as a [trier] of fact. So, I'm, you know, I'd—that's it. All right. Next witness.

"[The Petitioner's Counsel]: And the—it would be my client's daughter.

"The Court: All right. Same thing—

"[The Respondent's Counsel]: And I would raise the same objection, Your Honor.

"The Court: All right. Do you have anything else—

"[The Petitioner's Counsel]: It would be the same, Your Honor.

"The Court: —for this witness that would be different?

"[The Petitioner's Counsel]: It would be the same.

"The Court: All right. So, I don't see that there's any need for them to—to testify here. I don't think it's—it would be helpful."

We begin by setting forth our standard of review and applicable legal principles. "We review the [habeas] court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the [habeas] court's ruling, and only upset it for a manifest abuse of discretion. . . . The [habeas] court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the [petitioner] must prove both an abuse of discretion and a harm that resulted from such abuse. . . .

"Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Conn. Code Evid. § 4-1. As it is used in our code, relevance encompasses two distinct concepts, namely, probative value and materiality. . . . Conceptually relevance addresses whether the evidence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . In contrast, materiality turns upon what is at issue in the case, which generally will be determined by the pleadings and the

applicable substantive law. . . . If evidence is relevant and material, then it may be admissible. . . .

"Relevance does not exist in a vacuum. . . . To determine whether a fact is material . . . it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists." (Citation omitted; internal quotation marks omitted.) *Glen S.* v. *Commissioner of Correction*, 223 Conn. App. 152, 161–62, 307 A.3d 951, cert. denied, 348 Conn. 951, 308 A.3d 1038 (2024).

It is the obligation of the party seeking to have the evidence admitted to demonstrate its relevance to the habeas court. *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995). "Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) Id. Moreover, appellate "review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection." (Internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 739, 631 A.2d 288 (1993); see also *Corbett* v. *Commissioner of Correction*, 133 Conn. App. 310, 317 n.5, 34 A.3d 1046 (2012) (evidentiary claim is not properly preserved when party relies on one theory of admissibility at trial and on appeal relies on different theory of admissibility).

In the present case, the petitioner's counsel argued before the habeas court that the testimony was relevant because it would show that Attorney Jones did not contact the petitioner's children and that they could testify as to whether they had knowledge of the allegations made by the victim against their father. The petitioner's counsel did not articulate for the court his belief

that the petitioner's children would testify as to facts that made the victim's allegations of abuse more or less probable. In fact, beyond stating that he expected the children to testify that Attorney Jones did not contact them, the petitioner's counsel failed to articulate *any* substantive facts that the children would be expected to discuss during their testimony.

In his brief before this court, the petitioner argues, for the first time, that his children "*presumably* . . . would also have testified as to their relationship with the petitioner, the relationship between the [victim] and the petitioner, and whether or not the petitioner ever assaulted either of them, if they ever saw the petitioner assault the [victim], or if the relationship between the [victim] and the petitioner was consensual." (Emphasis added.) Even if it would be proper for this court to consider these new grounds to support his claim of relevance, they do not include any substantive facts. The petitioner merely identifies topics that the children "presumably" would be able to testify about without articulating the specific information each child would have been able to testify to at the habeas trial. On appeal, the petitioner baldly asserts that "[the children] had valuable and exculpatory testimony in the form of character evidence." This, however, was not the argument made by counsel at the habeas trial, and, moreover, it fails to identify the "valuable and exculpatory" nature of the proposed testimony.

The petitioner also asserts that the habeas court should have looked to the broader record when considering the relevance of the children's testimony, claiming that the testimony of B, who testified at the habeas trial just before the petitioner's counsel attempted to present their testimony, would have made their testimony relevant. The petitioner's habeas counsel, however, never articulated a connection between B's testimony and the

children's potential testimony during the offer of proof at the habeas trial.

For the foregoing reasons, we conclude that the petitioner has failed to demonstrate that the habeas court abused its discretion in precluding the petitioner's children from testifying at the habeas trial.

## II

The petitioner next claims that the habeas court erred in denying his petition for a writ of habeas corpus. Specifically, the petitioner asserts that the habeas court erred in concluding that Attorney Jones' failure to contact and call his children as witnesses at the underlying criminal trial did not constitute deficient performance and that he failed to demonstrate how he was prejudiced by the deficient performance. We are not persuaded.

We begin by setting forth the well settled standard of review and legal principles related to claims of ineffective assistance of counsel. "It is well established that [t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas [court], as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 40–41, 188 A.3d 1 (2018), cert. denied, U.S. , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019).

"The sixth and fourteenth amendments to the United States constitution, as well as article first, § 8, of the

Connecticut constitution, guarantee a criminal defendant the assistance of counsel for his or her defense. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . When a [habeas petitioner] complains of the ineffectiveness of [trial] counsel's assistance, the [petitioner] must show that counsel's representation fell below an objective standard of reasonableness. . . . In other words, the petitioner must demonstrate that [trial counsel's] [performance] was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Moreover, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." (Citations omitted; internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, 341 Conn. 279, 286–88, 267 A.3d 120 (2021) (citing *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Although our review of the habeas court's ultimate conclusion is plenary, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; *that is, the* [*petitioner*] *must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.* . . . Indeed, our Supreme Court has recognized that [t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [A] reviewing court is required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Emphasis in original; internal quotation marks omitted.) *Morales* v. *Commissioner of Correction*, 220 Conn. App. 285, 305–306, 298 A.3d 636, cert. denied, 348 Conn. 915, 303 A.3d 603 (2023).

It must be emphasized that the standard of reasonableness regarding performance is an objective one. *Harrington* v. *Richter*, 562 U.S. 86, 110, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Jordan* v. *Commissioner of Correction*, supra, 341 Conn. 287. As such, "our plenary review requires us, first, affirmatively to contemplate the possible strategic reasons that might have supported [the trial counsel's] decisions . . . and, second, to consider whether those reasons were objectively reasonable." *Jordan* v. *Commissioner of Correction*, supra, 291–92.

This inquiry is not altered when the trial counsel whose performance is at issue has died prior to the habeas trial. Id., 289–90. Although this necessarily means that the trial attorney cannot offer testimony regarding the reasons behind her decisions, the fact that the court must "contemplate the possible strategic reasons that might have supported" the challenged

action; id., 290; and then "consider whether those rea-
sons were objectively reasonable"; id.; means that the
inquiry may be done without an investigation into
" 'counsel's subjective state of mind.' " Id., 291. Rather
than being mere speculation, the contemplation of trial
counsel's possible strategic reasons for acting is an
integral part of the standard analysis. Id., 304–305.

Then, "[t]o satisfy the prejudice prong, a claimant
must demonstrate that there is a reasonable probability
that, but for counsel's unprofessional errors, the result
of the proceeding would have been different. . . .
[T]he question is whether there is a reasonable probabil-
ity that, [without] the errors, the [fact finder] would
have had a reasonable doubt respecting [the petition-
er's] guilt. . . . A reasonable probability is a probabil-
ity sufficient to undermine confidence in the outcome.
. . . In making this determination, a court hearing an
ineffectiveness claim must consider the totality of the
evidence before the judge or jury. . . . Although a peti-
tioner can succeed only if he satisfies both prongs, a
reviewing court can find against a petitioner on either
ground." (Citations omitted; internal quotation marks
omitted.) Id., 287–88.

We first consider whether trial counsel performed
deficiently. "[T]he right to the effective assistance of
counsel applies no less to the investigative stage of a
criminal case than it does to the trial phase. . . . Coun-
sel's strategic choices made after thorough investiga-
tion of law and facts relevant to plausible options are
virtually unchallengeable; [but] strategic choices made
after less than complete investigation are reasonable
precisely to the extent that reasonable professional
judgments support the limitations on investigation. In
other words, counsel has a duty to make reasonable
investigations or to make a reasonable decision that
makes particular investigations unnecessary." (Citation
omitted; internal quotation marks omitted.) *Grant* v.

*Commissioner of Correction*, 225 Conn. App. 55, 68–69, 314 A.3d 1, cert. granted, 349 Conn. 912, 314 A.3d 1018 (2024). Therefore, the failure to investigate and the failure to call as witnesses persons not investigated are deeply intertwined.

"[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. . . . [A] court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. . . . In addition, in contrast to our evaluation of the constitutional adequacy of counsel's strategic decisions, which are entitled to deference, when the issue is whether the investigation *supporting* counsel's [strategic] decision to proceed in a certain manner was itself reasonable . . . we must conduct an objective review of [the reasonableness of counsel's] performance. . . . Thus, deference to counsel's strategic decisions does not excuse an inadequate investigation . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 69.

"When a petitioner alleges that counsel has provided ineffective assistance on the basis of counsel's failure to call a witness, [d]efense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation *and without adequate explanation,* failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when [s]he was conducting it." (Emphasis in original; internal quotation marks omitted.) *White* v. *Commissioner of Correction*, 209 Conn. App 144, 157, 267 A.3d 289, cert. denied, 341 Conn. 904, 268 A.3d 78 (2021).

The possible adequate explanations for a counsel's failure to investigate and call witnesses at trial include the following: "(1) counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case; (2) the defendant provides some information, but omits any reference to a specific individual who is later determined to have exculpatory evidence such that counsel could not reasonably have been expected to have discovered that witness without having received further information from his client; or (3) the petitioner fails to present, at the habeas hearing, evidence or the testimony of witnesses that he argues counsel reasonably should have discovered during the pretrial investigation." (Footnotes omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 681–82, 51 A.3d 948 (2012). In sum, "[c]ounsel does not engage in deficient performance by failing to call witnesses to testify in instances in which jurors likely would have found the testimony unreliable, inconsistent, or unpersuasive in light of the state's evidence against the petitioner." (Internal quotation marks omitted.) *White* v. *Commissioner of Correction*, supra, 209 Conn. App. 158.

The following additional facts are relevant to the resolution of this claim. At the habeas trial, Ruscito, an investigator with the Division of Public Defender Services, testified that he assisted Attorney Jones in the preparation of the defense for the petitioner's criminal trial. He testified that he and Attorney Jones visited with the petitioner while he was in prison numerous times before trial to discuss the case and any potential defenses. He further testified that, had the petitioner informed him and Attorney Jones of potential helpful witnesses, they would have made attempts to locate them and would have spoken with them. The petitioner, however, never brought any such witnesses to their attention. Moreover, the petitioner himself testified at

the habeas trial and admitted that he suggested only calling B as a witness during his meetings with Attorney Jones and Ruscito. When asked by habeas counsel whether he told Attorney Jones of any other potential witnesses, he testified that he told her to review the victim's medical records.

In its memorandum of decision, the habeas court stated: "[T]rial counsel's theory of defense was a defense of consent. The petitioner testified at his criminal trial that he and the victim, his stepdaughter, were in love and had a consensual sexual relationship that did not begin until the victim was sixteen years old. The record further shows that Attorney Jones' trial strategy involved attacking the victim's credibility. During her cross-examination of the victim, Attorney Jones highlighted discrepancies in the victim's timeline of events and repeatedly questioned the victim as to why she did not disclose various details about the assaults prior to her testimony at trial. Based on the foregoing, the court finds that the petitioner did not overcome the presumption that Attorney Jones' actions constituted sound trial strategy. As a result, the petitioner failed to sustain his burden of proving that Attorney Jones' performance was deficient as to these claims. Moreover, the petitioner failed to prove that, had trial counsel investigated or subpoenaed additional defense witnesses, the outcome of the underlying proceedings would have been different."

The petitioner argues before this court that, if Attorney Jones had presented the testimony of the children at the criminal trial, they "presumably" would have testified "as to their relationship with the petitioner, the relationship between the [victim] and the petitioner, and whether or not the petitioner ever assaulted either of them, if they ever saw the petitioner assault the [victim], or if the relationship between the [victim] and the petitioner was consensual." As we determined in

part I of this opinion, the habeas court, on relevancy grounds, properly precluded the children from testifying at the habeas trial. However, the testimony of Ruscito and the petitioner establishes that the petitioner did not provide Attorney Jones with "any reference to a specific individual who [was] later determined to have exculpatory evidence such that counsel could not reasonably have been expected to have discovered that witness without having received further information from [her] client." *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 682. Moreover, given that the defense's strategy was based upon a theory of consent, even if Attorney Jones had interviewed and learned of the substance of the children's testimony, it is objectively reasonable to conclude that calling them as witnesses was unnecessary and inconsistent in light of that strategy. We therefore conclude that the petitioner has failed to overcome the presumption that, under the circumstances, Attorney Jones' performance was within the wide range of reasonable professional assistance and was not deficient.

Moreover, even if it was necessary for us to reach the issue of whether the habeas court properly determined that the petitioner failed to demonstrate that Attorney Jones' performance was deficient, the petitioner has failed to prove how her allegedly deficient performance prejudiced him. The failure of defense counsel to investigate a potential witness does not constitute ineffective assistance of counsel unless the petitioner can demonstrate specific information that the trial "counsel failed to uncover," and how that information would have benefitted his defense. *Hilton* v. *Commissioner of Correction*, 161 Conn. App. 58, 68, 127 A.3d 1011 (2015), cert. denied, 320 Conn. 921, 132 A.3d 1095 (2016); see also *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 858–59, 33 A.3d 819, cert. denied, 303 Conn. 936, 36 A.3d 695 (2012). Additionally,

"[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction*, 129 Conn. App. 699, 703, 21 A.3d 901, cert. denied, 302 Conn. 921, 28 A.3d 342 (2011). The petitioner must be able to "demonstrate that there is a reasonable probability that, but for counsel's [failures], the result of the proceeding would have been different." (Internal quotation marks omitted.) *Jordan* v. *Commissioner of Correction*, supra, 341 Conn. 287. "The likelihood of a different result must be substantial, not just conceivable." *Harrington* v. *Richter*, supra, 562 U.S. 112.

In the present case, the petitioner's counsel argued to the habeas court that the children were not contacted by Attorney Jones and that they had knowledge of the allegations against their father, but the petitioner's counsel did not articulate the specific knowledge that would have supported the petitioner's theory of defense that the sexual activity occurred after the victim was sixteen years old and was consensual. For those reasons, the habeas court precluded their testimony on the grounds of relevance. The petitioner did not present any other admissible evidence as to how Attorney Jones' failure to investigate and present their testimony at the criminal trial harmed his defense. Therefore, the petitioner has failed to demonstrate that there is reasonable probability that, but for Attorney Jones' alleged deficient performance, the result of the proceeding would have been different.

Accordingly, the habeas court properly concluded that Attorney Jones did not render ineffective assistance.

The judgment is affirmed.

In this opinion the other judges concurred.